## BAMFORD *vs.* MELVIN.

The offices of justice of the peace, and of sheriff, deputy sheriff, or coroner, are not compatible with each other.

Therefore a deputy sheriff, holding a commission of the peace, and extending an execution on real estate, cannot lawfully administer the oath to the appraisers.

Where the officer, in his return of the extent of an execution, states that the appraisement was made under oath, but does not refer to the certificate of the magistrate; the court, in an action between other persons touching the title acquired by the extent, will not look beyond the officer's return to take judicial notice of any defect in the administration of the oath, though apparent on the face of the magistrate's certificate indorsed on the execution.

THIS was an action of the case against the defendant as a deputy sheriff of this county, for violation of his duty in relation to the extent of an execution in favor of the plaintiff against one *Lovejoy—first*, in falsely returning that he had caused the appraisers to be sworn, whereas they were not sworn; and *secondly* in not causing them to be sworn.

It was admitted, at the trial before *Weston J.*, that the plaintiff had caused the land to be attached on the original writ in her suit; that within thirty days after judgment, which was recovered in *April* 1822, the execution had been duly delivered to the defendant for service; that after the attachment, and before judgment, the debtor had mortgaged the land to *R. Williams, Esq.* who demanded the same of the plaintiff, claiming to hold it against her; that *Lovejoy* had died insolvent; and that in making the extent, the defendant, holding a commission as justice of the peace, *had himself administered the oath to the appraisers.* The execution and extent being made part of the case, it appeared that the administration of the oath was certified on the back of the execution, in common form; and that the officer's return stated that the appraisement was under oath, without referring to the certificate as part of his return.

Upon these facts the judge directed a nonsuit, subject to the opinion of the court.

Bamford *v.* Melvin.

*Emmons,* for the plaintiff, argued that the extent was void. The acquisition of title by extent depends wholly on positive enactments, each of which must be strictly pursued. One of these is, that the appraisers be duly sworn. The person administering the oath must be authorized, by common law, or by statute. But we have no statute authorizing the defendant to administer oaths in cases like the present. Nor could he derive such power from his commission of justice of the peace ; for he was legally disqualified to act in this office, by simultaneously holding and subsequently continuing to act under his commission of deputy sheriff. This is the doctrine of the common law ;—1 *Bl. Com.* 344 ; 3 *Bac. Abr.* 737 ;—and of the Constitution of Maine. 3 *Greenl.* 484. In this view of the point, it is not material to inquire whether the administration of oaths is a judicial or a ministerial act ; the power in either case being wanting.

Nor can the objection that the certificate of the oath is no part of the return, and therefore not judicially before the court, be sustained ; because here the whole proceedings under the execution are made part of the case, and must all be taken together. Thus it is apparent that what is meant by " appraised upon oath" in the officer's return, is, that the oath was administered by the officer himself; and this being merely void, the appraisers were not sworn, and the action is maintained.

*Sprague,* for the defendant, in reply to the argument drawn from the Constitution of Maine, *art.* 3, *sec.* 1, 2, distributing the powers of the government, and inhibiting persons, belonging to one department, from exercising any of the powers properly belonging to another, conceded that the defendant belonged to the executive department, but denied that the administration of oaths was an exercise of judicial power. Otherwise, it could not be done, in similar cases, by the debtor himself. *Barnard v. Fisher,* 7 *Mass.* 71. Notaries public, town clerks, qualifying officers, even the chief Executive, and the President of the Senate, are in various instances authorized to administer oaths ; yet this has never been deemed an exercise of judicial power. So coroners are authorized by statute to administer oaths to jurors of inquest ; yet the

constitutionality of this law has never been doubted. Even a justice of the peace, when issuing an execution, or taking a recognizance, has been held to act, not judicially, but ministerially. *Albee v. Ward*, 8 *Mass.* 84; *Briggs v. Wardwell*, 10 *Mass.* 356.

The legislature itself has acted on this principle in authorizing the Governor and Council to administer oaths of office to the judges of this court. *Stat.* 1821, *ch.* 104. Are not the judges of this court constitutionally qualified?

But if it were a judicial act, it is not an exercise of "judicial power," within the meaning of the constitution. For this power, by *art.* 6, *sec.* 1, is exclusively vested in such "courts" as shall be established. But a justice of the peace, in administering oaths, does not hold a court. Nor can this court, in the opinion cited from 3 *Greenl.* 484, be understood to mean that every act of a justice of the peace is a judicial act; for the question propounded to them was general, whether a person belonging to the executive department could "of right exercise the office," that is, *all* the powers, of a justice of the peace. And the answer must be taken in as general a sense, that such person could not exercise *all* such powers; but it must be subject to such limitations and exceptions as may be indicated by the application of other principles. If it means more than this, it might not be indecorous to ask the court to revise that opinion, given, as it must have been, without argument and without consultation.

But if it is a binding decision, it ought not to govern the case at bar, since it was pronounced three years after the levy was made; and it partakes of the character of a legislative act, no parties having ever been heard upon the question.

And if the inhibition extends to this case, yet the proceedings are not necessarily void. The administration of the oath may be classed among those acts, which, like a levy made by a coroner who has not given bond, or a marriage solemnized without consent of parents, or the publication of banns, may be good, though the officiating officer is censurable for a misdemeanor. *Dillingham v. Nason*, 15 *Mass.* 170; *Bucknam v. Ruggles ib.* 180; *Fowler v. Bebee*, 9 *Mass.* 231.

Bamford *v.* Melvin.

MELLEN C. J. delivered the opinion of the Court at the adjourned term in *Cumberland*, in *August* following.

By the agreement of the parties, if the levy is void, the nonsuit is to be set aside and a default entered. In the extent of the execution the defendant assumed to act both as a justice of the peace, and a deputy sheriff of the county of *Kennebec*. If by law he was then disqualified to perform those acts which he did perform in either of those capacities, then the levy is a nullity. The first act which he did on the occasion was that of choosing an appraiser. In this he acted as a deputy sheriff. The second act was that of administering an oath to the appraisers. This he did as a justice of the peace. The third was that of delivering seisin and possesion to the creditor. This he did as deputy sheriff. It is contended by the counsel for the defendant that there was no legal or constitutional incompatibility in the performance of the above mentioned official acts : that the administration of the oath to the appraisers was not a judicial act, but merely a ministerial one : and that, therefore, he had a right to perform that act, though acting as a deputy sheriff in other respects. The correctness of this position must be tested by the constitution. The second section of the third article declares " that no person or persons belonging to one of those departments, shall exercise any of the powers properly belonging to either of the others, except in cases herein expressly directed or permitted." The departments mentioned are the Legislative, the Executive, and the Judicial. Laws passed under the authority of the constitution have designated the powers to be exercised by the respective departments, where any particular designation has been found necessary ; and where such designation has been made, the power thus designated becomes one properly belonging to the department to which it has been given. It will not be denied that a justice of the peace belongs to the judicial department. He exercises a portion of the judicial power. From this view of the subject it is perceived that whether the act of swearing the appraisers was a judicial or ministerial one, is an immaterial inquiry. No person is by law authorised to perform that duty but a justice of the peace. He was, therefore, when performing it, exer-

3

cising a power properly belonging to the judicial department ; because by law it is given to him, as an officer belonging to that department ; and he certifies that he administered the oath in the capacity of a justice of the peace. This question is not a new one. The justices composing this court in 1825, were called upon by the Senate for their opinion ; a majority of whom gave their answer, that " the office of justice of the peace is incompatible with that of sheriff, deputy sheriff or coroner." And " that no person can, according to the third article of the constitution, of right hold and exercise at the same time the several offices of deputy sheriff and justice of the peace," or " the several offices of sheriff and justice of the peace," or " the several offices of coroner and justice of the peace." We hold the same opinion now ; and we apprehend that since the construction was given to that part of the constitution as abovementioned, it has been invariably adhered to in practice : and though the execution in question was levied as early as 1822, we are bound to consider it in the same light, as if levied since the above opinion of the court was given.

It may be proper here to observe that the constitution of Massachusetts contained no provision so explicit as ours in relation to the subject under consideration. The language there is, " The Legislative department shall never exercise the Executive and Judicial powers, or either of them : The Executive shall never exercise the Legislative and Judicial powers, or either of them : The Judicial shall never exercise the Legislative and Executive powers, or either of them." In Massachusetts the prohibition applies to the departments ; in Maine it applies to persons belonging to the respective departments. The distinction is worthy of observation. Placing the defence of the cause upon the ground on which the counsel for the defendant has placed it, our opinion is that it cannot be sustained.

But there is another view of the cause which we have taken, and which seems to have escaped the critical eye of the learned counsel. The plaintiff demands damages of the defendant for the alleged falsity of his return, in which he states that the appraisers appraised the lands upon oath, or else for his neglect in not causing them to be sworn. Her claim for damages is based on the principle that the levy is a nullity ; and, of course, that

*Williams*, to whom *Lovejoy*, the debtor, conveyed the premises prior to the levy, may maintain an action for the land and recover the same from her, and thus at once divest her of property, equal to the amount of her judgment against *Lovejoy*, and the expenses of the levy. Is this a correct view of her claim to damages, or of her title to the premises on which the execution was extended? Suppose we were now examining *Williams's* title to the land in question, in a writ of entry against the present plaintiff, in which he relied on his deed from *Lovejoy* as evidence of his title. *Bamford* in defence would rely on the levy, in connexion with the attachment of the land, thus deriving title from *Lovejoy* from a date prior to the title of *Williams*. In the defence of such action one incontestible principle of law would be relied upon, and contended to be applicable, namely that the return of a sheriff can never be contradicted, except in an action against the sheriff who made such return. An objection founded on that principle would lead us to the examination of *Melvin's* return on the execution. This return makes no reference to any of the previous proceedings which appear on the back of the execution. It professes to be an independent return of itself: and on examination it is found to contain a statement of all those anterior facts and proceedings necessary to constitute a perfect and legal levy; and when recorded, sufficient to convey the estate to *Bamford* the creditor, unless a different result is produced by the circumstance that *Melvin's* certificate of his having sworn the appraisers, is entered on the back of the execution. What effect that circumstance would have, in such a case, upon the legality and effect of the levy, is the next question to be examined. In *Barnard v. Fisher*, 7 *Mass.* 71, it appeared by a certificate, entered on the back of the execution that the debtor himself swore one of the appraisers, and signed the certificate as a justice of the peace. *Parker J.* in delivering the opinion of the court says, in reply to the objection on that account, " We are of opinion that this does not make the levy void. The counsel for the defendant has argued that he, being interested, is not a proper certifying officer of the fact that the appraisers were sworn. It is a sufficient answer to the objection that the return of the sheriff is the

proper evidence that the appraisers were sworn : and it has been decided, and we think correctly, that although there should be no certificate from the magistrate who swore the appraisers, yet if it appeared by the return of the sheriff that they were duly sworn, the levy would be valid." In *Shove v. Dow*, 13 *Mass.* 529, there was an error in the date of the officer's return, by which it appeared that he delivered seisin and possession about twelve days before the appraisers performed their duty as appeared on their certificate and by the date of it. *Jackson J.* in giving the opinion of the court says, " The certificate signed by the appraisers, is not a part of the return, excepting as it is made so by the officer, by referring to it in the part which is signed by him. The officer alone is authorised to certify what is done by force of the execution : and as it is apparent from his return, that he delivered seisin after the appraisement of the land, although by the dates it would appear to be done before, we must reject one of those dates." In *Williams v. Amory*, 14 *Mass.* 20, *Parker C. J.* in delivering the opinion of the court says, " The statute requires that the doings on the execution shall be returned by the sheriff. If he certify that the appraisers were duly chosen and sworn, and that they performed the duty assigned them, it is sufficient." In this last case the name of one of the appraisers was *Edward Davis :* but in the certificate of the justice it is stated that *Benjamin Davis* was sworn. Thus it appears that in all the three cases above mentioned, the defective or false certificates were entered on the back of the execution ; but yet the return of the officer only was considered as the legitimate and decisive proof, and the certificate of the justice, or the appraisers, on account of its insufficiency or evident imperfection or mistakes, was wholly disregarded. Now, in principle, what distinction is there between the case of *Williams v. Amory* and the case at bar ? In the former, it did not appear by the certificate of the magistrate that more than two of the persons who made and signed the appraisement had been sworn : and in the latter, taking the certificate of *Melvin*, as a justice of the peace, in connexion with the facts showing that he had no authority to administer such an oath, it does not appear that any of the appraisers were sworn. Still the defendant as deputy sheriff

certifies that they were sworn : and nothing appears on the back of the execution shewing but that some person duly authorised administered the oath, whose certificate need not be annexed.    Therefore, in the case before the court, why should not the certificate of *Melvin* that he swore the appraisers be disregarded, and the officer's return be believed ?    In this return he says the appraisers performed the duty assigned them upon oath : and the law says that between third persons, his return is conclusive as to the facts which he states in his return.    According to the foregoing principles, applied to the facts of the present case, we perceive no ground on which *Williams* could maintain the supposed action against Mrs. *Bamford*.    Why then should she maintain this action ?    She has suffered no damage : she has a legal title to the land on which her execution was extended, according to the facts stated in the return signed by *Melvin* as deputy sheriff.    Should *Williams* see cause to contest the question of title with Mrs. *Bamford* and be defeated on account of any neglect or falsehood in *Melvin's* return, he is perfectly competent to judge for himself whether he could not maintain an action against *Melvin* if not barred by the statute of limitations, and recover damages equal to the loss sustained in consequence of his alleged misconduct in his office.    We are all of opinion that this action cannot be maintained.